## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:10-cv-02717-SHL-tmp |
| SKANSKA USA BUILDING, INC., | ) ) | |
| Defendant. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART, DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Plaintiff's Motion for Partial Summary Judgment (ECF No. 59), filed on November 4, 2011. Defendant filed a Response in Opposition (ECF No. 62) on December 1, 2011. Defendant also filed its own Motion for Summary Judgment on November 3, 2011. (ECF No. 54.) Plaintiff filed a Response in Opposition (ECF No. 69) on December 12, 2011 and Plaintiff filed a reply (ECF No. 81) on January 12, 2011. The case was originally decided on summary judgment, on the theory that Skanska USA Building, Inc. ("Skanska") was not liable because it was not an employer in this case. (See ECF No. 97.) The Sixth Circuit Court of Appeals reversed this decision and remanded the case to this Court for further proceedings. (ECF No. 109.) The parties then filed a motion to renew their previously filed motions for summary judgment. (ECF Nos. 110, 111, 112.) Subsequently, the intervening plaintiff (Maurice Knox) entered into a settlement agreement with Defendant and his claims were dismissed with prejudice. (ECF Nos. 121, 122.)

For the reasons set forth below, Defendant's Motion is **GRANTED in Part and DENIED in Part** and Plaintiff's Motion is **GRANTED in Part and DENIED in Part.**

## *BACKGROUND*

The Equal Employment Opportunity Commission ("EEOC") sued Skanska on behalf of Maurice Knox, Samuel Burt, and Robert Vassar ("the individuals"), alleging racial discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981.  Plaintiff originally brought this claim based on the theory that Skanska was liable as a joint employer.  This Court granted summary judgment in favor of Skanska, holding that Skanska was not a joint employer in this case.  The Sixth Circuit reversed, holding that Skanska was indeed a joint employer under the facts alleged here, and remanded to this Court for further proceedings.  Thereafter, the parties renewed their previous motions for summary judgment.

Skanksa is a general contractor.  From 2007 to 2010, Skanska managed the construction of a new hospital facility in Memphis for Methodist Le Bonheur Healthcare.  C-1, Inc. is a small contractor owned by Gerald Neely.  Skanska hired C-1 to operate temporary elevators ("buck-hoists") at the construction site.  C-1 in turn hired several men to operate the elevator, including Maurice Knox, Samuel Burt, and Robert Vassar (all of whom are African-American).  They were all allegedly subjected to extensive harassment based on their race.

Other workers at the site allegedly called Knox a "monkey" and a "nigger."  Knox also claims he saw racist graffiti in the portable toilets, including the word "nigger," the phrase "niggers have to leave," and "a depiction on the toilet walls of a white person holding a shotgun and shooting a black person."  Burt also claims he heard workers refer to buck-hoist operators as "niggers" and "black motherfuckers."  Burt and Knox claim they complained repeatedly about the name-calling and graffiti to two of Skanska's managers, Norberto Jiminez and Robert Jones, but that neither manager took action.  Skanska removed Burt from the jobsite in June, allegedly without giving Burt or Neely a reason for his removal.

Robert Vassar claims workers would call him racial slurs "every single day" he worked at the Skanska site whenever they thought that Vassar took too long to pick them up in the buckhoist. Skanska's manager, Norberto Jimenez, could allegedly hear the slurs over the walkie-talkie, but did nothing about them. When Vassar came to work using crutches, a Skanska supervisor told him to "get the hell off my jobsite" and that "[y]ou niggers always think you[] are heroes." Vassar believed he was fired from the jobsite after this incident and never returned. Vassar complained to Neely after he was told to leave the job site, but Neely told him there was nothing he could do about it.

On August 19, 2009, an unidentified white employee allegedly threw liquid from a portable toilet onto Knox. Knox tried to find the perpetrator but could not locate him. Knox then immediately reported the incident to Neely and Jimenez. Knox had an altercation with another contractor's employee when Knox returned to work on August 21, 2009. When Jiminez arrived on the scene to investigate, the other subcontractor's employee admitted to using racial slurs towards Knox. Jiminez sent Knox home to "calm down" but allegedly did not reprimand the other employee.

Skanska suspended C-1's contract after the August 21, 2009 incident and replaced all of the C-1 operators with Skanska employees. Neely appealed this decision to Le Bonheur Healthcare's Vice President of Facilities Management, David Rosenbaum. Rosenbaum ordered Skanska to reinstate C-1 as a subcontractor and gave C-1 permission to bring back whomever it wanted. Neely brought Knox and Burt back to work on the site on August 25, 2009. Skanska removed Knox from the site for using his cell phone while on the job on September 3. Burt remained at the site for the duration of the job, but continued to hear racial slurs every day.

### *STANDARD OF REVIEW*

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, Carter v. Univ. of Toledo, 349 F.3d 269, 274 (6th Cir. 2003), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court is to "view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party." Bible Believers v. Wayne Cnty., —— F.3d ——, 2014 WL 4211190, at *5 (6th Cir. Aug. 27, 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Once a properly supported motion for summary judgment has been made, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court's role is not to weigh evidence or assess credibility of witnesses, but simply to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Kroll v. White Lake Ambulance Auth., —— F.3d ——, 2014 WL 4067748, at *3 (6th Cir. Aug. 19, 2014) (quoting Anderson, 477 U.S. at 251–52).

### *ANALYSIS*

**I. Skanska's Motion for Summary Judgment**

**1. Hostile Work Environment**

To prevail on a claim of hostile work environment based on race, a plaintiff must establish that: (1) plaintiff is a member of a protected class; (2) plaintiff was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (5) the defendant knew or should have known of the harassment and failed to act.  See Waldo v. Consumers Energy Co., 726 F.3d 802, 813 (6th Cir. 2013) (quoting Williams v. CSX Transp. Co., Inc., 643 F. 3d 502, 511 (6th Cir. 2011)).  Skanska moves for summary judgment as to the Commission's claims of a hostile work environment suffered by Burt, Vassar, and Knox, arguing that the Commission cannot establish that the harassment of any of the individuals was sufficiently severe to create an abusive working environment and that the Commission cannot establish that Skanska's reaction to Vassar and Knox's harassment was inadequate.  For the following reasons, Skanska's Motion for Summary Judgment is DENIED as to the hostile work environment claims on behalf of all individuals.

**a. The Severity of the Harassment**

In determining whether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment, Courts must look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L.Ed.2d 295 (1993).  Under this totality-of-circumstances test, "the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile

environment case, but whether—taken together—the reported incidents make out such a case."
Williams v. Gen. Motors Corp., 187 F.3d 553, 562 (6th Cir. 1999).  The harassment must be both
objectively and subjectively severe, *i.e.*, "the conduct must be severe or pervasive enough to
create an environment that a reasonable person would find hostile or abusive, and the victim
must subjectively regard that environment as abusive." Black v. Zaring Homes Inc., 104 F.3d
822, 826 (6th Cir. 1997) (emphasis added) (citing Harris, 510 U.S. at 21-22).  Here, all three
individuals have stated that they viewed the environment as hurtful and abusive.  Therefore, for
the purposes of summary judgment, the critical question is whether there is sufficient evidence
so that a reasonable jury could find that the harassment was objectively pervasive or severe
enough to create a hostile work environment.

Skanska employees (and Skanska's subcontractor's employees) allegedly subjected all
three individuals to racial slurs on a regular basis.  Knox claims workers called him "monkey"
and "nigger" between 18-23 times in the short time he worked at the job site.  (ECF No. 70-4 at
16-17.)  Vassar similarly alleges that workers at the site called him slurs, including "nigger," and
"black ass monkey," on a daily basis during his employment as a buck-hoist operator.  (ECF No.
70-10 at 5, 7.)  Burt also claims to have regularly heard slurs such as "nigger" and "black
motherfucker" directed towards him.  (ECF No. 70-3 at 11.)  In addition, Knox claims he
observed graffiti in the portable toilets that included the words "nigger" and "niggers need to
leave" and a depiction of a white person holding a shotgun and shooting a black person.  (ECF
No. 70-15.)

Skanska's argument, that the alleged harassing statements are mere "offensive
utterances" which are not sufficiently severe to create a hostile work environment, does not stand
up to scrutiny.  The Sixth Circuit has held that an abundance of racial epithets and racially

6

offensive graffiti may constitute severe and pervasive harassment.  See Jackson v. Quanex Corp., 191 F.3d 647, 662 (6th Cir. 1999);  see also Torres v. County of Oakland, 758 F.2d 147, 151 (6th Cir. 1985) (noting that "continuing use of racial or ethnic slurs would violate Title VII"). Furthermore, the specific slur "nigger" is "pure anathema to African–Americans" and "[f]ar more than a 'mere offensive utterance.'"  E.E.O.C. v. Ralph Jones Sheet Metal, Inc., 777 F. Supp. 2d 1119, 1124 (W.D. Tenn. 2011) (citations omitted).  In this case, there are specific allegations of repeated uses of the term "nigger" and other racial slurs that are backed up by the testimony of the targeted individuals as well as by affidavits of witnesses who observed some of this abuse.  (See ECF No. 70-5, 70-6.)  Taking these claims in the light most favorable to the plaintiff, there is sufficient evidence for a reasonable jury to find that there was a racially discriminatory hostile work environment.  Because this is the only argument Skanska has offered in support of its Motion for Summary Judgment on the hostile work environment claim filed on behalf of Burt, the motion is DENIED as to that claim.  Moreover, this argument cannot support summary judgment as to the hostile environment claims related to Knox and Vassar.

**b. Adequacy of Skanska's Response**

Defendant also argues that it should not be liable for the hostile work environment claim of Knox and Vassar because they took prompt action to remedy those complaints.  Skanska does not argue that it responded adequately to Burt's complaints.

As part of a hostile work environment claim, plaintiffs must demonstrate a basis for holding the employer liable for the harassing conduct of an employee's coworkers, *i.e.*, that the employer "tolerated or condoned the situation or that the employer knew or should have known of the alleged conduct and failed to take prompt remedial action."  Jackson v. Quanex Corp., 191 F.3d 647, 659 (6th Cir. 1999) (internal quotation marks omitted).  A response is generally

adequate if it is "reasonably calculated to end the harassment." Waldo v. Consumers Energy Co., 726 F.3d 802, 814 (6th Cir. 2013) (quoting Jackson, 191 F.3d at 663). The appropriateness of a response must be judged in light of the frequency and severity of the alleged harassment. See Erebia v. Chrysler Plastic Prods. Corp., 772 F.2d 1250, 1252–53 (6th Cir. 1985).

Skanska first argues that they could not respond to the harassment of Vassar because Vassar did not formally complain about the conduct. However, the standard is not simply whether Skanska had actual knowledge of harassment, but whether Skanska should have known about it. Vassar admittedly did not complain to Skanska about the alleged behavior of his co-workers. However, there are sufficient facts in the record to find that Skanska should have known about a hostile work environment towards African Americans in general and African American buck-hoist operators specifically.

Skanska had notice of racial slurs being directed at buck-hoist operators prior to Vassar's arrival on the site in July 2009, because Burt had allegedly informed Skanska managers of similar harassment in April 2009, and Skanska did nothing to address the issue. (ECF No. 70-3 at 5.) In addition, Skanska was aware of racial graffiti in portable toilets and stairwells, and of complaints from other subcontractors regarding the use of the word "nigger" by Skanska Superintendent Darren McGee. (See ECF No. 70-6.) A reasonable jury could conclude that this evidence of pervasive, consistent racial harassment put Skanska on notice of the same type of harassment directed at Vassar, and therefore Skanska's Motion for Summary Judgment is DENIED as to the Commission's hostile work environment claim on behalf of Vassar.

Skanska claims that they first knew of Knox's harassment when Knox complained after a co-worker threw a mixture of chemicals and urine on him on August 19. Skanska argues that they provided an adequate response by investigating Knox's complaint and taking the following

actions: (1) posting signs on the doors to the buck-hoist on all floors which stated that harassment would not be tolerated and would result in removal of the offending worker from the site; (2) conducting a meeting with the site's major subcontractors during which the subcontractors were told that any harassment of the buck-hoist operators would not be tolerated; (3) requesting that Neely spend more time onsite so that he could assist with any ongoing issues; (4) designating one buck-hoist as available for deliveries to ensure workers understood it was not passing them up; (5) assigning an employee to assist with coordinating buck-hoist deliveries; (6) lifting the "No Tools/No Ride" policy to allow for further monitoring of the buck-hoist operational issues; (7) extending the buck-hoist delivery hours to alleviate pressure on the buck-hoist; and (8) building an additional dock access to relieve congestion.  (See ECF No. 70 at 62-62, 68-70.)  While it is possible that a jury could find that these responses were adequate, these changes were arguably not imposed when Skanska first knew, or should have known, of the harassment of Knox.  Therefore, there is evidence to support a jury finding that Skanska's response was not a timely one.

As discussed above, there was an extensive record of racial harassment on the site prior to Knox's arrival that Skanska knew or should have known about and failed to adequately respond to.  Furthermore, Knox reported to Skanska managers multiple times that he was being harassed based on his race and they allegedly failed to respond to these complaints in any way. (ECF No. 70-4 at 7.)  A jury could find that the eventual response to Knox's complaints after an employee assaulted him with portable toilet waste does not excuse Skanska for its failure to respond to Knox's earlier complaints of harassment.  Therefore, Skanska's Motion for Summary Judgment is DENIED as to Knox's hostile work environment claims.

### 2. Retaliation

Defendant also seeks summary judgment on the Commission's retaliation claims. Title VII prohibits employers from discriminating based on race as well as from retaliating against employees for opposing racial discrimination. 42 U.S.C. § 2000e-3(a). To make out a *prima facie* case of retaliation, the Commission must show that (1) an employee engaged in activity protected under Title VII; (2) the employee's exercise of protected rights was known to Defendant; (3) an adverse employment action was subsequently taken against the employee; and (4) there was a causal connection between the protected activity and the adverse employment action. Fuhr v. Hazel Park School Dist., 710 F.3d 668, 674 (6th Cir. 2013) (citing Garner v. Cuyahoga Cnty. Juvenile Court, 554 F.3d 624, 639 (6th Cir. 2009)).

Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action. Once a defendant proffers a legitimate, non-discriminatory reason, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the reasons given are mere pretext for intentional discrimination. A plaintiff may show that the claimed reason is pretext by demonstrating that the reason (1) has no basis in fact, (2) is not the actual reason, or (3) is insufficient to explain a defendant's actions. Logan v. Denny's, 259 F.3d 558, 567 (6th Cir. 2001).

**a. Knox**

For the purposes of summary judgment, the Commission has established a *prima facie* case that Knox was retaliated against for complaining about racial harassment. Knox complained to Skanska on multiple occasions about the racial harassment, satisfying the first two elements of the retaliation claim. There was an adverse employment action against Knox's employer when Skanska suspended C-1's contract just two days after Knox complained about having urine thrown on him and the ongoing racial harassment. Although the contract was

reinstated the following week at the behest of Methodist-Le Bonheur's owner representative / project manager David Rosenbaum (See ECF No. 70-6, ¶ 8.), approximately two weeks later, Knox suffered an adverse employment action when he was permanently removed from the site, allegedly for using his cell phone while on the job site.  (See ECF No. 70-4 at 12.)  Given the temporal proximity between the complaints and the adverse employment action, there is sufficient evidence of the final element, the causal connection.

It is undisputed that Knox used his cell phone on the job site the day he was terminated, and Skanska argues that this was a legitimate, non-discriminatory reason for firing him. However, the Commission argues that this justification was a mere pretext for retaliation, pointing to evidence that the use of cell phones on the site was generally tolerated by Skanska even though it was officially forbidden.  (See ECF No. 70-6, ¶ 9; ECF No. 70-3 at 9.)  Viewed in light of the other evidence of racial animus on the site, this evidence of disparate treatment is sufficient to create a genuine issue of material fact as to whether Knox's termination was retaliation for his complaints about racial harassment.  Therefore, Skanska's Motion for Summary Judgment is DENIED as to the Commission's claim of retaliation on behalf of Knox.

### b. Burt

Viewing the facts in the light most favorable to the nonmoving party, the Commission has also established a *prima facie* case of retaliation on behalf of Burt.  The Commission claims that Burt was harassed based on his race every day he worked at the site, and that he also complained about this harassment to Skanska's managers on a daily basis, establishing the first two *prima facie* elements.  (ECF No. 70-3 at 11.)  Skanska removed Burt from the site in June, 2009, approximately two months after he first complained about racial harassment.  According to Burt, there was not a specific incident that led to him being told to leave the site and Skanska

11

never gave him or Neely a reason for his dismissal, providing sufficient evidence for a jury to conclude that there is a causal connection between the complaints and the adverse employment action.  (ECF No. 70-3 at 6.)  Therefore, these allegations are sufficient to make out a *prima facie* case of retaliation.

Skanska argues that there was a legitimate non-discriminatory reason for removing Burt from the site.  Skanska foreman Bryan Quigley claims that he frequently heard complaints that the buck-hoist operations were too slow, that the buck-hoist operators would pass up workers on certain floors, that the buck-hoist was sometimes not running when it should have been, and that the buck-hoist operators had a bad attitude.  (ECF No. 57-4 at 4-5.)  Quigley further claims that Skanska removed Burt from the site because of "these types of complaints" but he states that he was not personally involved in Burt's removal.  (Id.)  Skanska corporate representative Adam Hicks testified that Skanska removed Burt from the site because he was too confrontational. (ECF No. 56-1 at 26.)  However, Hicks claims that his knowledge of this came from Quigley and that Quigley was responsible for removing Burt.  (Id.)  Because Quigley claims no personal involvement in Burt's removal, and no firsthand knowledge of it, and Hicks based all of his testimony on Quigley's reports, it is unclear where the evidence purporting to support the legitimate, non-discriminatory reason actually came from.  At the very least, it is based on hearsay offered by witnesses who admit to having no personal knowledge of the reasons Burt was removed from the site.  This evidence would likely be inadmissible at trial, and therefore cannot be relied upon at the summary judgment stage.  See, e.g.,  Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citations omitted) (noting that an affidavit not made on personal knowledge that did not set forth facts that would be admissible into evidence is inadmissible). Since Skanska has only provided inadmissible evidence to support their legitimate non-

discriminatory reason, they have failed to meet their burden of production.  See Texas Dep't of

Cmty. Affairs v. Burdine, 450 U.S. 248, 255, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981)

(noting that in order to meet the burden of production in providing a legitimate, non-

discriminatory reason, a defendant's explanation must be legally sufficient to justify a judgment

for the defendant).  Skanska's Motion for Summary Judgment is therefore DENIED as to the

Commission's claim for retaliation on behalf of Burt.

### c. Vassar

In contrast to Knox and Burt, the Commission cannot make out a *prima facie* case of

retaliation on behalf of Vassar.  Vassar came to work one day on crutches, and was told by a

Skanska employee to get off the job site.  (ECF No. 56-5 at 111-13.)  At that point, he believed

he was fired.  Vassar then complained to Neely about Skanska removing him from the site, but

he never complained about or reported the alleged harassment to any officials prior to being

removed from the site.  (ECF No. 56-5 at 132.)  The Commission cannot show that Skanska fired

Vassar as a result of his participation in protected activity because Vassar did not participate in

any protected activity until after he was removed from the job site.  Therefore, Skanska's Motion

for Summary Judgment is GRANTED as to the Commission's claim for retaliation on behalf of

Vassar.

### 3. The EEOC's Attempt to Conciliate

Skanska argues that all claims should be dismissed because the Commission failed to

conciliate in good faith prior to bringing suit.  Section 706(b) of Title VII provides that, after a

charge of discrimination is filed and investigated, the Commission "shall endeavor to eliminate

any such alleged unlawful employment practice by informal methods of conference, conciliation,

and persuasion" prior to filing suit.  42 U.S.C. §2000e-5(b).  The statute further provides that the

Commission may bring a civil action if it is unable to "secure from the respondent a conciliation agreement acceptable to the Commission." 42 U.S.C. §2000e-5(f)(1).

The Commission has considerable discretion in how it attempts to conciliate cases.  See EEOC v. Keco Industries, Inc., 748 F.2d 1097, 1102 (6th Cir. 1984) ("The form and substance of … conciliations is within the discretion of the EEOC … and is beyond judicial review").  The district court's sole function is to ensure that the Commission made a good faith effort to conciliate the claim before bringing suit.  Id. at 1101-02 (internal quotations omitted).  An effort to conciliate is in good faith if the EEOC makes "a 'sincere and reasonable effort' by providing the employer with an 'adequate opportunity to respond to all charges and negotiate possible settlements.'"  EEOC v. Tri-State Plumbing, Heating & Air Conditioning Contrs., Inc., 502 F. Supp. 2d 767, 770 (W.D. Tenn. 2007) (internal citations omitted).

Skanska argues that the case should either be dismissed or stayed because the Commission failed to conciliate in good faith.  The Court disagrees.  The undisputed facts of this case show that the Commission made a good faith effort to conciliate this claim.  Knox filed his EEOC charge in September 2009, asserting claims only on behalf of himself.  After a lengthy investigation, the Commission contacted Skanska, stating that it was going to be issuing a determination letter and proposed conciliation agreement.  The determination letter was issued on August 26, 2010.  In the letter, the Commission asserted claims on behalf of Knox as well as "a class of other C-1, Inc employees [who] were subject to a hostile work environment because of their race (Black) … [and] were discharged in retaliation for protesting [a] racially hostile work environment." (ECF No. 58-6 at 43-45.)  Included with the determination letter was a letter from the Commission inviting Skanska to engage in conciliation and a proposed conciliation agreement identifying all three individuals on whose behalf the Commission was bringing

14

charges.  The letter requested Skanska to make a decision as to whether to enter into conciliation by September 2, 2010.  (See ECF No. 25-3.)

Skanska responded to the determination letter by calling the EEOC District Director, Katharine Kores, and leaving her a voicemail that allegedly stated that Skanska was preparing a request for reconsideration and did not want to enter into conciliation until the EEOC decided whether to reconsider.  Skanska submitted a formal request for reconsideration on September 13, 2010, eleven days after the deadline to enter into conciliation.  The EEOC interpreted this as a rejection of the conciliation process.

Skanska argues that the EEOC's conclusion that Skanska had rejected conciliation was "wholly unreasonable."  However, whether the Commission's interpretation was reasonable is beside the point.  The statute only requires that the Commission make a good faith effort to conciliate.  There is no evidence in the record indicating that the initial offer to conciliate was not in good faith, and nothing to lead the Court to believe that the EEOC's interpretation of Skanska's position was not in good faith.  In fact, the Commission has shown a continued willingness to settle this case out of court[1].  Skanska knew they had until September 2, 2010 to make a decision as to whether to attempt conciliation.  Instead, they chose to focus their efforts on convincing the Commission to reconsider their findings.  The EEOC's efforts at conciliation were in good faith, and therefore Skanska's Motion for Summary Judgment is DENIED as to the Commission's alleged failure to conciliate.

### 4. Notice Posting

Skanska moves for summary judgment on the EEOC's claim that Skanska failed to comply with Title VII's notice posting requirement.  Title VII requires every employer to "post

---

[1] As evidence of this, the parties notified the Court on December 3, 2014 that they have scheduled a mediation of this case for Tuesday, January 13, 2015.  (See ECF No. 124.)

and keep posted in conspicuous places upon its premises where notices to employees, applicants for employment, and members are customarily posted a notice to be prepared or approved by the Commission setting forth excerpts from or, summaries of, the pertinent provisions of [Title VII] and information pertinent to the filing of a complaint." 42 U.S.C. § 2000e-10 (a).  Skanska states that the required notice was posted on the job board and that therefore summary judgment should be granted as to this claim.  The Commission argues that Skanska failed to comply with this requirement because, when the EEOC's inspector visited the construction site, nothing on the job board was legible.  There is a dispute as to a material fact regarding this claim (whether a legible sign was posted), therefore, Skanska's Motion for Summary Judgment is DENIED as to this claim.

## II. The EEOC's Motion for Partial Summary

### 1. Subject Matter Jurisdiction (Third Affirmative Defense)

Skanska's third affirmative defense is that: "The Court lacks jurisdiction over the subject matter of this lawsuit to the extent the allegations of the Amended Complaint are beyond the scope of a timely filed charge of discrimination."  (ECF No. 46 at 13.)  The Commission argues that this defense fails as a matter of law and the Court should therefore grant summary judgment. Skanska did not respond to the Commission's arguments.  For the following reasons, the Commission's Motion for Summary Judgment is GRANTED as to Skanska's third affirmative defense (lack of subject matter jurisdiction).

The EEOC's complaint must be limited to the claims asserted in the EEOC charge and the claims reasonably expected to grow out of the EEOC's investigation of the charge of discrimination.  EEOC v. Wilson Metal Casket, 24 F.3d 836, 840 (6th Cir. 1994).  The Commission is not precluded from bringing suit on claims that were not included in the charge of

16

discrimination if facts related to the charged claim would prompt the EEOC to investigate a different, uncharged claim.  Weigel v. Baptist Hosp. of E. Tenn., 302 F.3d 367, 380 (6th Cir. 2002) (quoting Davis v. Sodexho, Cumberland Coll. Cafeteria, 157 F.3d 460, 463 (6th Cir. 1998)).

This case grew out of a charge of discrimination alleging racial harassment and retaliation that Maurice Knox filed against Skanska.  The Commission discovered that Burt and Vassar suffered similar harassment during their investigation of Knox's claims.  The alleged harassment suffered by Knox, Burt, and Vassar consisted of similar racial insults, and occurred around the same time period and at the same job site.  Skanska does not dispute that the facts of Knox's charged claim gave rise to the investigation of the similar claims on behalf of Burt and Vassar, therefore, as a matter of law, these claims are within the scope of the EEOC's investigation of the charge of discrimination.  Accordingly, the Commission's Motion for Summary Judgment is GRANTED as to Skanska's third affirmative defense (lack of subject matter jurisdiction), and that defense shall be stricken.

### 2. Exhaustion of Administrative Remedies (Fourth Affirmative Defense)

Skanska's fourth affirmative defense is that the claims on behalf of Knox should be dismissed because Knox failed to exhaust administrative remedies.  As support for their position, Skanska states that the complaint filed in this matter includes allegations that were not a part of Knox's original charge of discrimination.  (ECF No. 46 at 13.)  This defense, then, is substantively identical to the defense claiming that there is no subject matter jurisdiction.  A charging party has exhausted their administrative remedies if they file a charge of discrimination and the allegations in the Complaint reasonably grew out of the EEOC's investigation of the charge of discrimination.  EEOC v. Wilson Metal Casket, 24 F.3d 836, 840 (6th Cir. 1994).  It is

undisputed that Knox filed a timely charge of discrimination with the EEOC, and, as discussed above, the allegations in the complaint are within the scope of the investigation of the charge of discrimination.  Therefore, the Commission's Motion for Summary Judgment is GRANTED as to Skanska's fourth affirmative defense (failure to exhaust administrative remedies) and that defense shall be stricken.

### 3. Timeliness of Burt and Vassar's Claims (Fifth Affirmative Defense)

Skanska's fifth affirmative defense is that the claims on behalf of Burt and Vassar are barred because they failed to file timely charges of discrimination.  This claim is also substantively identical to Skanska's third affirmative defense.  As discussed above, the Commission may bring claims on behalf of Burt and Vassar (even though they did not file a charge) because those claims are within the scope of the investigation of the allegations in the charge that was timely filed.  See EEOC v. Taco Bell, 575 F.Supp.2d 884, 890-91 (W.D. Tenn. 2008) (citations omitted) (noting that the EEOC can bring a complaint for a non-filed claim if it is substantially related to and arises out of the same time frame as a timely charged claim). Therefore, the Commission's Motion for Summary Judgment is GRANTED as to Skanska's fifth affirmative defense (timeliness of Burt and Vassar's claims) and that defense shall be stricken.

### 4. Timeliness of the Charge (Seventh Affirmative Defense)

Skanska's seventh affirmative defense is that the EEOC's claims are barred by Title VII's statute of limitations because they rely on alleged acts occurring more than 180 days before the filing of a charge of discrimination.  Skanska's defense fails as a matter of law.

Title VII has dual statutes of limitations.   While 180 days is the default statute of limitations, "deferral states" have a 300 day statute of limitations.  See Amini v. Oberlin College, 259 F.3d 493, 498 (6th Cir. 2001) (citing Alexander v. Local 496, Laborers' Int'l Union of N. Am., 177

F.3d 394, 407 (6th Cir. 1999), <u>cert. denied</u>, 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000)).  Tennessee is deferral state, and therefore the 300 day statute of limitations applies.  <u>See</u> <u>Tartt v. City of Clarksville</u>, 149 Fed.Appx. 456, 460 (6th Cir. 2005).  The alleged acts in the complaint occurred within the 300 days prior to Knox filing the charge of discrimination, therefore, the Commission's Motion for Summary Judgment is GRANTED as to Skanska's seventh affirmative defense (timeliness of the charge) and that defense shall be stricken.

**5. Injunctive Relief (Eighth Affirmative Defense)**

Skanska's eighth affirmative defense is that the Commission's claims for injunctive relief are barred, in whole or in part, because there are adequate legal remedies, and because the job site at issue is no longer active, rendering the request for injunctive relief moot.  The Commission seeks summary judgment on this defense, arguing that proof that legal remedies are inadequate is not an element of a Title VII case for injunctive relief.  The Commission is incorrect.

A court may enjoin a respondent from engaging in an unlawful employment practice or grant any other equitable relief the court deems appropriate if the court finds that the respondent has intentionally engaged in an unlawful employment practice.  <u>See</u> 42 U.S.C. § 2000e-5(g)(1). While injunctive relief is available, district courts are not automatically required to grant injunctive relief aimed at preventing racial harassment in the future whenever an employer is found to have violated Title VII.  <u>Prentice v. Am. Standard, Inc.</u>, No. 91–6126, 972 F.2d 348, 1992 WL 172662, at *2 (6th Cir. July 23, 1992).  Defendants are required to show that they have taken effective measures to prevent future discrimination if Title VII liability is established (and a plaintiff is seeking injunctive relief), however, the ultimate burden of proving that injunctive relief is necessary remains with the plaintiff.  <u>Id.</u>  Injunctive relief is only appropriate when there

is not an adequate legal remedy, *i.e.*, where the damages in a Title VII action are insufficient to prevent future discrimination.  It is not clear at this stage whether injunctive relief is appropriate in this case, but Skanska is entitled to argue that it is not.  Therefore, the Commission's Motion for Summary Judgment is DENIED as to Skanska's eighth affirmative defense (that injunctive relief is inappropriate in this case).

### 6. Equitable Defenses (Sixteenth and Seventeenth Affirmative Defenses)

Skanska asserts the equitable defenses of *laches* and unclean hands as their sixteenth affirmative defense, and *estoppel* as their seventeenth affirmative defense.  The Commission moves for summary judgment on these defenses, arguing that Skanska has not and cannot show facts supporting these claims.  Skanska's answer does not allege any facts that would support these affirmative defenses (See ECF No. 46 at 16), and Skanska did not respond to the Commission's arguments in their response to the motion for summary judgment.

When the nonmoving party in a summary judgment motion bears the burden of proof at trial, Rule 56 requires them to "go beyond the pleadings" and designate specific facts showing that there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Skanska bears the burden of proof at trial as to affirmative defenses, but offered no facts in support of these equitable defenses in response to the Commission's Motion for Summary Judgment.  Because Skanska has not put forth sufficient facts supporting any of these equitable defenses, the Commission's Motion for Summary Judgment is GRANTED as to Skanska's sixteenth and seventeenth affirmative defenses (*laches*, unclean hands, and *estoppel*) and these defenses shall be stricken.

### 7. Skanska's Right to Assert New Affirmative Defenses (Eighteenth Affirmative Defense)

Skanska's final affirmative defense is not actually a defense, rather, it is a statement that

Skanska reserves the right to amend or assert additional affirmative defenses or counterclaims that may become known during the course of discovery or otherwise established by the facts of this case.  The Commission seeks summary judgment on this "defense," arguing that it fails to satisfy Fed. R. Civ. P. 8(b)(1)(A), which requires a party to "state in short and plain terms its defenses to each claim."  While the Commission's position is technically correct, it reads far too much into the "belt and suspenders" approach by Skanska.  While this statement is located in Skanska's list of affirmative defenses, it was clearly not an actual self-contained defense, but instead merely attempts to declare an alleged right to assert appropriate defenses in the future. Summary judgment is not appropriate for such a statement, therefore the Commission's Motion for Summary Judgment is DENIED as to Skanska's eighteenth affirmative defense (the right to assert additional affirmative defenses in the future).  However, the Court notes that it will decide whether Skanska is allowed to assert additional defenses, if Skanska attempts to do so.

## CONCLUSION

Skanska's Motion for Summary Judgment is **GRANTED** as to the Commission's retaliation claim on behalf of Vassar and **DENIED** as to all other claims.  The Commission's Motion for Partial Summary Judgment is **DENIED** as to Skanska's fifth and eighth affirmative defenses (the appropriateness of injunctive relief and the right to raise additional affirmative defenses) and **GRANTED** as to Skanska's third, fourth, fifth, seventh, sixteenth, and seventeenth affirmative defenses.

**IT IS SO ORDERED,** this 23rd day of January, 2015.

/s/ Sheryl H. Lipman
Sheryl H. Lipman
U.S. DISTRICT COURT JUDGE